**LONG MANUFACTURING CO., N. C., INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION and F. Ray Marshall, Secretary of Labor, Respondents.**

No. 76–1518.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1977.

Decided May 12, 1977.

---

Michael L. Roeder, Davenport, Iowa, for petitioner.

Stephen A. Bokat, Atty., U. S. Dept. of Labor, Washington, D. C., for respondent; William J. Kilberg, Sol. of Labor; Benjamin W. Mintz, Associate Sol. for Occupational Safety & Health; Michael H. Levin, Counsel for Appellate Litigation, Washington, D. C., on the brief.

Before WEBSTER and HENLEY, Circuit Judges, and MEREDITH,* District Judge.

HENLEY, Circuit Judge.

In this proceeding Long Manufacturing Co., N. C., Inc., hereinafter petitioner, seeks judicial review of a final order of the Occupational Safety & Health Review Commission (OSHRC), hereinafter Commission, as-

sessing a civil penalty against petitioner for having failed to abate a violation of a safety standard contained in a regulation appearing as 29 C.F.R. § 1910.212 promulgated by the Secretary of Labor pursuant to the National Occupational Safety & Health Act of 1970, 29 U.S.C. §§ 651 et seq.[1] We have jurisdiction by virtue of 29 U.S.C. § 660(a). That section requires us to accept the factual findings of the Commission if they are supported by substantial evidence on the record as a whole.

Petitioner is a manufacturing corporation based in Tarboro, North Carolina. It maintains a plant in Davenport, Iowa where it fabricates grain bins and boat trailers. During the time with which we are concerned, it employed about 1400 people, about 200 of whom were employed at the Davenport plant.

In its Davenport operation petitioner makes use of a number of machines including mechanical power presses. Two of petitioner's press machines were of the type known as press brakes which differ from conventional mechanical power presses in certain particulars. While such differences exist, a press brake in the last analysis is a mechanical power press designed to bend and form sheet metal. The material is worked by placing stock on a bottom die and causing it to be struck with a descending top die which moves up and down along slides constructed in the body of the machine. The stock is struck with tremendous force running into hundreds of tons per square inch.

Normally a power press, including a press brake, is operated by an individual who feeds stock manually into the machine, and then activates the machine by such means as foot pedals or hand controls. The risk of serious and mangling injuries to workers

---

* The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

1. The Act is a comprehensive one that is designed to protect the occupational safety and health of workers employed in industries affecting interstate commerce. The Act is remedial and is obviously entitled to a liberal construction. It has been before this court and

thoroughly analyzed and discussed in a number of cases including *Arkansas Best Freight System, Inc. v. Occupational Safety & Health Review Com'n,* 529 F.2d 649 (8th Cir. 1976), and *Brennan v. Occupational Safety & Health Review Com'n,* 487 F.2d 438 (8th Cir. 1974). No useful purpose would be served by repeating or paraphrasing those discussions.

whose hands or arms are caught by a descending die is obvious and has long been recognized. Although it is possible to protect operators from such injuries by mechanical guarding devices or operating procedures, it is unfortunately true that the use of protective devices or procedures tends to reduce the productivity of the machines, and some employers are willing to expose their employees to the inherent danger of working with "unguarded" machines rather than protect the workers at the expense of productivity. And frequently workers are under an economic compulsion to continue to work without safeguards although the danger of serious and permanent injury is obvious to them.[2]

As of June, 1973 there were in force two regulations of the Secretary, promulgated under the Act, which were designed to protect operators of machines from injury at the "point of operation." One of those regulations, 29 C.F.R. § 1910.212,[3] set out a general standard applicable to all machines. The other regulation, 29 C.F.R. § 1910.217, set out specific standards for mechanical power presses but excluded from the standards a number of types of machines including press brakes.[4]

On June 20, 1973 petitioner's plant was inspected by a compliance officer of the Labor Department's Occupational Safety & Health Administration, the agency through which the Secretary administers the Act. As of that time a number of petitioner's machines, including the two press brakes, were being operated without any guarding or protective devices whatever.

A citation was issued charging violations of 29 C.F.R. § 1910.212 with respect to the press brakes and other machines, and penalties totalling $1785.00 were proposed as provided by 29 U.S.C. §§ 658 and 659(a). Those proposed penalties were not protested within the time permitted by the Act

2. For discussion of the problem of economic compulsion in the context of a products liability case arising out of an injury sustained when an employee's arm was caught in a punch press, *see Rhoads v. Service Machine Co.,* 329 F.Supp. 367, 380 (E.D.Ark.1971).

3. (a) *Machine guarding—(1) Types of guarding.* One or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples of guarding methods are—barrier guards, *two-hand tripping devices,* electronic safety devices, etc.

(2) *General requirements for machine guards.* Guards shall be affixed to the machine where possible and secured elsewhere if for any reason attachment to the machine is not possible. The guard shall be such that it does not offer an accident hazard in itself.

(3) *Point of operation guarding. (i)* Point of operation is the area on a machine where work is actually performed upon the material being processed.

*(ii)* The point of operation of machines whose operation exposes an employee to injury, shall be guarded. The guarding device shall be in conformity with any appropriate standards therefor, or, in the absence of applicable specific standards, shall be so designed and constructed as to prevent the operator from having any part of his body in the danger zone during the operating cycle.

*(iii)* Special handtools for placing and removing material shall be such as to permit easy handling of material without the operator placing a hand in the danger zone. Such tools shall not be in lieu of other guarding required by this section, but can only be used to supplement protection provided.

*(iv)* The following are some of the machines which usually require point of operation guarding:
*(a)* Guillotine cutters.
*(b)* Shears.
*(c)* Alligator shears.
*(d) Power presses.*
*(e)* Milling machines.
*(f)* Power saws.
*(g)* Jointers.
*(h)* Portable power tools.
*(i)* Forming rolls and calenders.
(Emphasis supplied.)

4. Section 1910.217 was a "national concensus standard" adopted in 1971 by the American National Standards Institute (ANSI) and promulgated by the Secretary as authorized by 29 U.S.C. § 655. Section 1910.212 was an "established Federal standard" borrowed from regulations issued by the Secretary under the Walsh-Healey Act of 1936, 41 U.S.C. §§ 35 *et seq.* The promulgation of that standard under OSHA was also authorized by 29 U.S.C. § 655. In 1973 ANSI came out with standards dealing with press brakes, but those standards did not go into effect with respect to machines already installed and in use until 1976; those standards are not involved in this case.

and thus became final orders of the Commission. 29 U.S.C. § 659(a). The record indicates that petitioner paid the assessed penalties.

An initial period was allowed for the correction of the violations which period was extended until June 14, 1974. Between the date of the first inspection and that of a second inspection which took place in late August, 1974 petitioner installed dual hand controls at each of the working stations of the two press brakes. Those controls were such that if they had been properly located, an operator could not activate the machine without placing both hands on the controls and keeping them there during the strike phase of the machine's operating cycle. That, of course, would take the operator's hands and arms out of the danger zone.

However, petitioner placed the consoles on which the push button controls were located so close to each other than an operator could push both buttons with one hand, which left his other hand free to handle stock and possibly to be exposed to the descending die during the strike phase of the machine's operation. Further, the controls were so designed that one of them could be rendered inoperable in such manner that the operator could activate the press by pushing only one control button. And, indeed, both controls at a given work station could be deactivated, and when that happened the operator might have no control over the cycle of the press at his station.

On July 30, 1974 an operator while working at a station at one of the press brakes lost a finger of his left hand when it got caught in the machine. At the time one of the push buttons at his station had been rendered inactive, and the operator was activating the press by pushing the right hand control button while handling stock with his left hand.

On August 28, 1974 another inspection of petitioner's plant was made by a compliance officer, and he observed that the dual controls on the press brakes were so close together that both could be operated by one of the hands of the operator. The compliance officer considered that the problem could be corrected by the insertion of metal plates between the consoles at the respective working stations, and that was done by petitioner on the day after the inspection.

On the basis of the second inspection petitioner was cited for "repeated violations" of § 1910.212 with respect to the two press brakes and with respect to a third machine which was a punch press. A penalty of $350.00 was proposed.[5]

Petitioner protested the citation and proposed penalty, and the case was accordingly referred to the Commission for further proceedings in accordance with the Commission's rules of procedure which appear as Part 2200 of 29 C.F.R.

Those proceedings involved the filing of a complaint against petitioner by the Secretary. The Secretary's regional legal staff appears to have concluded that with respect to the press brakes petitioner was not guilty of a repeated violation but of having failed to correct or abate the initial violations which failure, if established, would in itself be a violation of 29 U.S.C. § 666(d) and would render petitioner liable to a civil penalty of up to $1,000.00 per day during which the failure to correct continued. The legal staff also seems to have concluded that with respect to the third machine petitioner was in fact guilty of a repeated violation based on the 1973 violations with respect to other machines, including the press brakes.

---

5. The penalty for a willful or repeated violation of the Act or of standards prescribed thereunder may be as high as $10,000.00. 29 U.S.C. § 666(a). An employer who commits a non-willful initial violation is subject to a civil penalty of up to $1,000.00; if the violation was of a "serious" nature, a penalty must be imposed; if the violation was "non-serious," the imposi-

tion of a penalty is discretionary. 29 U.S.C. § 666(b) and (c). A "serious" violation is defined in 29 U.S.C. § 666(j). While it appears to us that in 1973 petitioner might have been charged with a serious violation, the record indicates that it was in fact charged with a violation that was other than serious.

The views of the staff were incorporated in the complaint that was filed, and as to the press brakes the citation was amended so as to charge a failure to correct the original violations. Further, the amount of the proposed penalty was increased from $350.00 to $8700.00 for all three of the machines.

In its answer petitioner denied that it should be penalized in any sum and certainly not in a sum as large as $8700.00, and it objected to the amendment that has just been described. In addition, petitioner moved to dismiss the complaint, and in that motion it took the position for the first time that § 1910.212 was not applicable to press brakes in view of the provisions of § 1910.-217, notwithstanding the fact that press brakes were not covered by that regulation.

The case was assigned to an administrative law judge who permitted the amendment to the citation and proposed penalty and who denied the motion to dismiss. An evidentiary hearing was held in due course before the judge, and he rendered his decision on or about July 1, 1975.

The judge found on the merits that petitioner was guilty of a repeated violation with respect to the punch press and penalized petitioner $350.00 for that violation. As to the press brakes, the judge found that the charge of having failed to correct the initial violations had been sustained. He also found that petitioner had acted in bad faith and with conscious indifference to the safety of its employees engaged in operating the press brakes. The judge imposed a penalty of $5,000.00 with respect to those machines.

Review of the judge's decision was granted, and the matter was considered by the full Commission. The Commission's decision was rendered in May 1976.

As to the punch press machine, the decision of the administrative law judge was reversed on the ground that that machine was covered by § 1910.217 and not by § 1910.212. As to the press brakes, the decision of the administrative law judge was affirmed by a majority of the Commission with Commissioner Moran dissenting

as he had done in earlier cases involving the applicability of § 1910.212 to press brakes. Commissioner Moran also thought that the $5,000.00 penalty imposed was grossly excessive.

The Commission's decision having been rendered, the instant petition for review was timely filed in this court. For reversal, petitioner contends that § 1910.212 was not applicable to press brakes, and that if it was, it set out a standard too vague to form a valid basis for an award of a civil penalty. Petitioner also contends that the Secretary should not have been allowed to amend the August, 1974 citation and proposed penalty, that no penalty should have been imposed, and that in any event the $5,000.00 penalty imposed was excessive.

■ Taking up, first, petitioner's complaint about the amendment of the citation and proposed penalty, we find that contention to be without merit. A citation and proposed penalty are preliminary steps in the Act's enforcement scheme. An employer may accept the citation and proposed penalty without protest if he chooses to do so, but in our view if he chooses to contest the matter before the Commission, he does not have any vested right to go to trial on the specific charge mentioned in the citation or to be free from exposure to a penalty in excess of that originally proposed.

■ The Commission's rules recognize that in a proper case both the citation and the proposed penalty may be amended, 29 C.F.R. § 2200.33(a)(3), and we think that it was within the discretion of the administrative law judge to allow the amendment in this case so as to reflect accurately the violations with which petitioner was charged and to set out a penalty thought to be more appropriate to the alleged conduct of the petitioner than the one originally proposed.

Petitioner was not surprised or prejudiced in any way by the change in the nature of the charge, and it was not prejudiced by the increase in the amount of the proposed penalty except in the sense that if petitioner had accepted the initial proposal

it would probably not have been faced with a higher proposal later. That, however, is not legal prejudice.

■ Moreover, even if the Secretary had not sought to increase the amount of the penalty originally proposed, the Commission would not have been bound by that amount. Penalties are assessed by the Commission and not by the Secretary, and when a penalty proposed by the Secretary is contested by the employer, the amount proposed by the Secretary is merely advisory. If the Commission finds that a penalty should be assessed, it may be in the same amount proposed by the Secretary, or a lesser amount, or a greater amount. 29 U.S.C. § 666(i); *Brennan v. Occupational Safety & Health Review Com'n,* 487 F.2d 438, 441–42 (8th Cir. 1974).

■ We also reject petitioner's contention that § 1910.212 was not applicable to press brakes. That contention has been rejected by the Commission not only in the instant case but also in *Diebold, Inc.,* OSHRC No. 6767 (1976), *review pending* 6th Cir., and *Irvington Moore, Division of U. S. Natural Resources,* OSHRC No. 3116 (1975), *review pending* 9th Cir. Aside from the weight properly to be given to those decisions of the Commission, we are satisfied that the position of petitioner is not well taken. Section 1910.212 is a general standard that would cover all power press machines had § 1910.217 not been promulgated, and we do not believe that press brakes are taken out of the coverage of § 1910.212 merely because they were excepted from the coverage of § 1910.217. To so hold would mean that during the period with which we are concerned operators of press brakes would not have been entitled to any protection whatever from the inherent risk of getting their hands or arms crushed by the machines that they were operating. Such a result was clearly not contemplated by Congress.

It is true in this context as in others that the general must yield to the specific, and 29 C.F.R. § 5(c)(1) recognizes that a general standard must give way to an applicable specific standard. It does not follow, however, that if a specific standard dealing with a certain generic type of machine excludes certain identified specific machines within the general class, those machines are to go completely unregulated even though they fall within the terms of a general regulatory standard. In other words, we do not think that a machine is in a regulatory vacuum merely because it has been excepted from a specific standard that takes some machines of the same genus out of the general standard.

Nor do we see anything objectionably vague or indefinite about § 1910.212 when applied to press brakes. When the regulation is read as a whole, it simply requires that when a machine is a source of danger to operatives at the point of operation, that point must be guarded by some appropriate means or device for the purpose of preventing any part of the body of the operator from being in the danger zone during the machine's operating cycle; and the regulation specifically includes power presses as machines that ordinarily require guarding at the point of operation.

Additionally, the regulation refers to dual hand controls as a suitable means of providing protection to workers in some instances. That was the method that petitioner ostensibly chose to employ, and it would have been effective if petitioner had not thwarted the protective function of the controls in the ways that have been described.

■ With respect to the question of whether any penalty should have been imposed on petitioner, we are satisfied that the findings of the administrative law judge and of the Commission that petitioner had violated 29 U.S.C. § 666(d) were supported by substantial evidence, and we are bound by them.

As to the amount of the penalty assessed, we have recognized that a determination of how large or how small a penalty should be imposed is not a finding of fact but is an exercise of discretion by the Commission which will not be disturbed by us in the absence of abuse. *Arkansas Best Freight System, Inc. v. Occupational Safety &*

*Health Review Com'n,* 529 F.2d 649, 656 (8th Cir. 1976); *Brennan v. Occupational Safety & Health Review Com'n, supra,* 487 F.2d at 442.

The $5,000.00 penalty assessed by the Commission was well within statutory limits and was not disproportionate to the size of petitioner's business. Petitioner's claims that it acted at all times in good faith and with reasonable diligence and that most of its difficulties lay in the fact that it could get no clear guidance from the Labor Department were raised before the administrative law judge and before the Commission and were rejected. And we think that the findings to the effect that petitioner had acted in bad faith and with indifference to the safety of its employees were supported adequately by the evidence. While the penalty assessed may seem to be large, we cannot say that it was so large as to amount to an abuse of discretion.

The petition for review is denied, and the order of the Commission will be enforced.