**UNITED PARCEL SERVICE OF OHIO, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Ray Marshall, Secretary of Labor, United States Department of Labor, Respondents.**

No. 77–1762.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1978.

Decided Feb. 17, 1978.

David W. Welch, Moller, Talent, Kuelthau, Dowell & Fisher, St. Louis, Mo., for petitioner.

Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Allen H. Feldman, Acting Counsel for Appellate Litigation, and Diane E. Burkley, Atty., U. S. Dept. of Labor, Washington, D. C., on brief, for respondents.

Before BRIGHT and HENLEY, Circuit Judges, and SMITH, Senior District Judge.*

HENLEY, Circuit Judge.

In this original proceeding petitioner, United Parcel Service of Ohio, Inc. (UPS), seeks judicial review of an adverse order of the Occupational Safety and Health Review Commission (OSHRC), an adjudicatory agency of the United States established by the Occupational Safety & Health Act of 1970, 29 U.S.C. §§ 651 *et seq.* We have jurisdiction by virtue of 29 U.S.C. § 660(a), and in the exercise of that jurisdiction we are required to accept the factual findings of the agency if supported by substantial evidence on the record as a whole.

The Act, which is comprehensive and highly remedial, is administered by the Secretary of Labor through the Occupational Safety and Health Administration (OSHA). One of the functions of OSHRC is to review actions taken by OSHA in the field of occupational health and safety, and final decisions of the Commission are subject to limited review in the respective courts of appeals.[1]

In the instant case the Commission, adopting the findings, conclusions and order of one of its administrative law judges, upheld a citation issued by OSHA charging the petitioner with a non-serious violation of § 5(a)(2) of the Act, 29 U.S.C. § 654(a)(2).

---

* The Honorable Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The Act and regulations promulgated thereunder by the Secretary and which appear as Chapters XVII and XX of Title 29 C.F.R. have been before the courts in many cases. Our own recent cases include *Long Mfg. Co., N.C., Inc. v. OSHRC,* 554 F.2d 903 (8th Cir. 1977); *Arkansas-Best Freight Systems, Inc. v. OSHRC,* 529 F.2d 649 (8th Cir. 1976); and *Brennan v. OSHRC,* 487 F.2d 438 (8th Cir. 1973).

The charge was that in connection with the operation of its facility at Bridgeton (Earth City), Missouri, petitioner had permitted certain of its employees to engage in the unloading and sorting of parcels and packages without requiring that they wear safety shoes to protect their feet and toes from injury from falling parcels. This conduct on the part of petitioner was said to be in violation of a general safety standard promulgated by the Secretary which appears as 29 C.F.R. § 1910.132(a).[2]

Although the Commission did not impose a pecuniary penalty on petitioner, petitioner is required, if the order is upheld, to abate the violation, and if it fails to do so, it is subject to a civil penalty of up to $1,000.00 for each day of unabated violation. 29 U.S.C. § 666(d).

We are of the opinion that the regulation that has been cited is a valid one as applied to the business of handling and delivering parcels or packages, and while we are also of the opinion that the Commission's finding of a violation of the Act based on a violation of the regulation is supported by substantial evidence, nevertheless, we are of the opinion that the remedy prescribed by the Commission was overbroad and amounted to an abuse of administrative discretion which we may hold to be invalid and set aside. 5 U.S.C. § 706(2)(A). Accordingly, we vacate the Commission's order and remand the case to the agency for further consideration and proceedings not inconsistent with this opinion.

We state, first, some background facts and the procedural history of the case.

UPS is engaged in the business of receiving, handling, transporting and delivering in interstate commerce parcels and packages of up to fifty pounds in weight and having maximum outside dimensions of one hundred eight inches. It is the largest private package handling and delivery service in the United States.

UPS maintains a number of establishments throughout the country at which establishments parcels are received in trucks, unloaded, sorted and dispatched for ultimate delivery in smaller trucks to the consignees of the packages. The establishment or facility with which we are concerned employs about 850 people, 375 of whom are classified as unloaders and sorters, and they physically unload and sort the packages received at the facility.

The record reflects that petitioner is interested in the occupational safety of its employees and has consistently maintained a comprehensive safety program. However, petitioner has never provided its unloaders and sorters with safety shoes or required them to provide such shoes for themselves. And occasionally employees sustain injuries to their feet or toes resulting from dropped or falling parcels; the incidence of such injuries seems to have been quite low.

On June 22, 1976 a compliance officer of OSHA made an inspection of the Bridgeton facility which involved conferences with plant officials, an examination of accident reports, and two "walk arounds" of the facility in the course of which he observed unloaders and sorters at work and the conditions under which they performed their work. The compliance officer noted what he considered to be a number of non-serious violations of prescribed safety standards, including the absence of safety shoes on the feet of the unloaders and sorters, and he reported his observations to his superiors.

---

**2.** (a) *Application.* Protective equipment, including personal protective equipment for eyes, face, head, and extremities, protective clothing, respiratory devices, and protective shields and barriers, shall be provided, used, and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact.

As we understand it, a "safety shoe" may be defined as a shoe that is fitted with a steel cap or plate designed to protect the toes of the wearer and to some extent the metatarsal bones of his foot from injury from falling objects or resulting from a striking with the foot or kicking a hard object.

On July 27, 1976 the Regional Director of OSHA, acting pursuant to 29 U.S.C. § 658(a), issued a citation against petitioner charging petitioner with other than serious violations of § 5(a)(2) of the Act, 29 U.S.C. § 654(a)(2), based on violations of safety standards prescribed by the Secretary including the standard imposed by 29 C.F.R. § 1910.132(a). Two violations of that standard were charged, but we are concerned here only with the alleged violation of the standard by petitioner in not furnishing or requiring employees to furnish safety shoes. The citation was amended to some extent on August 9, 1976, and the compliance date was extended from August 27, 1976 to September 20 of that year.

Petitioner did not contest two of the three violations charged by OSHA and petitioner paid the small penalty or penalties suggested by that agency. However, petitioner did protest the charge that it had violated the Act in the matter of safety shoes, and that protest brought the matter before the Review Commission, 29 U.S.C. § 659(c).

In due course, the Secretary filed his complaint against petitioner with the Commission, and the controversy between the parties was assigned to an administrative law judge. Overruling motions of petitioner to dismiss the complaint, the administrative law judge heard the case on the merits and found against petitioner. He ruled that the absence of steel-toed safety shoes constituted a violation of the prescribed standard and, therefore, of the Act, and he sustained the citation. He did not recommend any pecuniary penalty in addition to that or those already paid by petitioner.

The Commission denied an application of petitioner to reopen the record for the purpose of receiving additional evidence as to the extent of the injury received in the fall of 1975 by a particular employee, Adam Thomas, and the Commission also refused to grant discretionary review of the findings, conclusion and proposed order of the administrative law judge. The action last mentioned constituted the adoption by the Commission as its own the findings, conclusion and order of the judge.

Petition for review was timely filed in this court. In support of the petition UPS contends:

1. That the safety and health standard set out in 29 C.F.R. § 1910.132(a) is invalid because:

(a) It requires a practice or means not reasonably necessary or appropriate to provide safe employment for the unloaders and sorters.

(b) It is void for vagueness as applied to the parcel handling industry.

2. That the citation should have been dismissed as untimely filed.

3. That when the Commission refused to reopen the record to consider evidence as to the precise extent of the injury received by employee Adam Thomas, it denied petitioner a fair hearing.

4. That in any event the order of the Commission is not sustained by substantial evidence.

We will consider those contentions, but not in the order stated.

We reject as insubstantial petitioner's claim based on the refusal of the Commission to reopen the record in connection with the injury sustained by Thomas.

■ We find that the citation and amended citation were timely filed, and we do not accept petitioner's contention to the contrary which is based on a "legislative history" argument that was expressly rejected in *Brennan v. Chicago Bridge & Iron Co.*, 514 F.2d 1082 (7th Cir. 1975).

29 U.S.C. § 658(a) provides that a citation is to be issued with reasonable promptness after a violation is discovered by OSHA, and § 658(c) provides that no citation may be issued after the expiration of six months following the date of a violation. Here, it does not appear that the relatively short time lapse between the discovery of the alleged violation and the issuance of the citation was improperly motivated or was prejudicial to petitioner in any way. Both the original and amended citations were filed well within the six months period per-

mitted by § 658(c). On this phase of the case we are in full agreement with the result reached in *Todd Shipbuilding Corp. v. Secretary of Labor and OSHRC*, 566 F.2d 1327 (9th Cir. 1977).[3]

■ Nor can we agree with petitioner that as applied to the parcel handling industry the standard prescribed by 29 C.F.R. § 1910.132(a) is void for vagueness or that the safety shoe requirement is necessarily unreasonable or inappropriate when imposed upon an employer engaged in that industry.[4]

The attacks on the standard that have been made in this case are similar to those that were launched against it in *Arkansas-Best Freight Systems, Inc. v. OSHRC*, 529 F.2d 649 (8th Cir. 1976). In that case we upheld the standard as construed by the Commission and affirmed an order of the Commission requiring a common carrier of motor freight to see to it that its employees engaged in the handling of freight wore safety shoes. And we uphold it in this case as applied to the handlers of parcels, subject to the proviso that a safety shoe requirement with respect to such handlers must be reasonable in the circumstances of a particular case. In so doing, we recognize the obvious fact that a handler of heavy motor freight is exposed to more danger to his feet and toes than is a handler of light or relatively light parcels such as those handled by UPS. We consider, however, that the difference is one of degree rather than of principle.[5]

This brings us finally to the ultimate question in the case which is whether or not the order entered by the Commission is a valid and enforceable order. And in connection with that question we find it desirable to state some facts in addition to those that have been mentioned already.

Of the 375 people with whom we are concerned, only ten work full shifts. Those ten spend one-half of a work day unloading parcels from trucks and the other half day washing vehicles. The other 365 unloaders and sorters work only a few hours each day. Many of them are young people attending college, trade schools or high schools. There is no reason to believe that as a class they are affluent persons, and the means of many of them are probably quite limited.

The employment turnover among unloaders and sorters is extremely high. About 40% quit within the first thirty days of their employment and 50% or more of those employees quit within six months. Unloaders and sorters who remain on the job for more than thirty days are represented by a local labor union affiliated with what is commonly called the Teamsters Union.

3. The claim of untimeliness made in this case and in *Todd, supra*, is not dissimilar to claims that are now frequently made in criminal cases that prosecutions have been unreasonably delayed, and that the delays have deprived the defendants of due process of law. This court has had its share of such cases. *See United States v. Lovasco*, 431 U.S. 783, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977), *reversing United States v. Lovasco*, 532 F.2d 59 (8th Cir. 1976); *see also United States v. Partyka*, 561 F.2d 118 (8th Cir. 1977); *United States v. Blunk*, 561 F.2d 111 (8th Cir. 1977); *United States v. Matlock*, 558 F.2d 1328 (8th Cir. 1977); *United States v. Costanza*, 549 F.2d 1126 (8th Cir. 1977); *United States v. Naftalin*, 534 F.2d 770 (8th Cir.), *cert. denied*, 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 89 (1976); *United States v. Barket*, 530 F.2d 181 (8th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 282 (1976).

4. The power to prescribe safety and health standards is vested in the Secretary by 29 U.S.C. § 655, and § 652(8) defines an occupa-

tional and health standard as meaning a standard "which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment."

5. 29 C.F.R. § 1910.132(a) is a general standard, and it says nothing expressly about safety shoes or steel-toed shoes as they are sometimes called. In this connection, we note Judge Heaney's suggestion in *Arkansas-Best, supra*, 529 F.2d at 656, that ". . . the requirements with respect to safety-toe footwear in the trucking industry may have developed to the stage where they can be prescribed by specific regulation." We agree, however, that the matter is one normally "within the informed discretion of the Secretary." *Ibid. See Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 202–03, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947).

That is a strong union that is well able to bargain on behalf of employees not only with respect to wages and hours of work, but also with respect to working conditions, including conditions affecting the health and safety of employees.

Petitioner's volume of business at the Bridgeton facility varies to some extent with the seasons, being heaviest during the Christmas holidays and around Easter. However, petitioner handles on the average of 175,000 to 200,000 parcels a day at Bridgeton. Under its tariffs UPS is permitted to handle parcels weighing up to fifty pounds. However, 60% of the parcels actually handled weigh ten pounds or less and only 15% weigh more than twenty-five pounds.

Parcels arrive at the Bridgeton facility in large trucks. The parcels are removed from the trucks by the unloaders, and are placed on large conveyor belts which move them into the interior of the facility at which stage the sorters remove the parcels from the original conveyor belts and place them on smaller belts which convey them to various departments within the facility. Some of the smaller belts are above the heads of the sorters. Movement of the belts is controlled by an independent operator, and employees working adjacent to the belts cannot control the movement of the belts or the speed thereof.

The compliance officer of OSHA observed, and it is not disputed, that parcels have a tendency to pile up on the belts and may fall therefrom. In falling a parcel may strike the foot of an employee, or an employee may accidentally kick or stumble over a parcel that has fallen to the floor, or may drop a parcel on his foot. There is no question that such accidents can cause injuries of varying degrees of seriousness to the feet or toes of affected employees. And there can be no doubt that some of those injuries would not occur or would be less serious if the workers were wearing footgear more protective and substantial than the flimsy shoes or sandals which many of them have been accustomed to wear.

However, over the approximately eighteen month period between April 30, 1975 and October 21, 1976 only nine employees sustained job injuries of varying degrees of seriousness which caused varying losses of time from work; the time lost varied from a day or less to one instance in which an employee lost twenty-five days. The total time lost due to those injuries amounted to eighty-seven man days or 696 hours if one assumes a man day to consist of eight hours of work. Those 696 hours are to be compared with the 557,476 man hours worked by the part-time employees in 1975, and the 491,163 man hours worked by those employees in 1976.

Having reviewed the essentially undisputed evidence in the case, the administrative law judge made certain formal findings of fact, the following of which, aside from his jurisdictional finding, seem to be of controlling importance: That the unloaders and sorters are exposed to hazards from falling parcels and are not provided with safety shoes or required to provide such shoes for themselves; that notwithstanding petitioner's safety program packages still fall from the belts and have the potential of inflicting severe toe and foot injury; that the wearing of steel-toed shoes would be sufficient to withstand the impact of falling parcels and that such shoes would cost from $17.25 to $37.70 a pair.

Having made those findings, the administrative law judge drew the ultimate conclusion of law that petitioner had violated § 5(a)(2) of the Act by its failure to comply with the standard appearing in 29 C.F.R. § 1910.132(a). The judge's order, which the Commission adopted, was that the amended citation against petitioner be sustained.

As has been seen, the occupational safety and health standards that the Secretary is authorized to establish must be reasonably necessary or appropriate to their ends which are to provide safe and healthful employment and conditions of employment.

In upholding 29 C.F.R. § 1910.132(a) as applied to freight handlers we said in *Arkansas-Best, supra,* 529 F.2d at 653–54:

. . . The purpose of the Act is 'to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources.' 29 U.S.C. § 651(b). The Act is intended to prevent the first injury, including those of a nonserious nature. *See Lee Way Motor Freight, Inc. v. Secretary of Labor*, 511 F.2d 864, 870 (10th Cir. 1975); *Brennan v. Occupational Safety & Health Rev. Com'n*, 513 F.2d 1032, 1039 (2nd Cir. 1975); *Ryder Truck Lines, Inc. v. Brennan, supra* [497 F.2d 230] at 233; *Brennan v. Occupational Safety & Health Review Com'n*, 494 F.2d 460, 463 (8th Cir. 1974). The legislative decision has been made to protect the health of employees even though increased production costs may result. *Industrial Union Department, AFL–CIO v. Hodgson, supra* [499 F.2d 467] at 477. The Act does not attempt to balance as neatly as does *Arkansas-Best* the cost of compliance against the cost of employees' injuries. This is not to say that economic considerations are irrelevant under the Act. The statement of purpose embodied in 29 U.S.C. § 651(b) is qualified by the words 'so far as possible.' Moreover, the legislative history makes clear that the standards promulgated by the Secretary must be feasible. Senate Report No. 91–1282, 1970 U.S.Code Cong. & Admin.News p. 5183. *See Industrial Union Department, AFL–CIO v. Hodgson, supra* at 477–478; *National Rlty. & C. Co., Inc. v. Occupational S. & H. R. Com'n*, 160 U.S.App.D.C. 133, 489 F.2d 1257–1266 (1973).

Thus, while the statute is to be construed liberally in the interest of employee health and safety, still, the rule to be applied is one of reasonableness and feasibility, and the financial impact of a particular requirement on an employer is not to be left entirely out of account, although it goes without saying that an employer is not to be permitted to tolerate a foreseeable hazard simply because the elimination of it may be costly.

The order of the Commission, as we read it, requires UPS to require all of its 375 unloaders and sorters to wear steel-toed shoes while at work. An exhibit tendered to the administrative law judge by petitioner indicates that there are numerous kinds of safety shoes available, and, as the judge found, the prices range from a low of $17.25 to a high of $37.70, a spread of $20.45.

We think it highly unlikely that persons interested in engaging in short term, parttime work for petitioner as unloaders and sorters would be interested in spending their own money to purchase special shoes to wear while working on a job that will probably be held for only a short period of time. Such being the case, the cost of the program, which would obviously run into thousands of dollars over any substantial period of time, would fall entirely on the shoulders of petitioner.

In our view the evidence adequately supports the factual finding of the agency to the effect that petitioner's unloaders and sorters are exposed to the hazard of falling parcels and would justify the inference that the hazard is not de minimis. There is no question that some employees have in fact been injured as a result of having their feet and toes struck by falling parcels, and we think that there is a substantial evidentiary basis for the finding that the use of steeltoed shoes would effectively eliminate the hazard.

However, in view of the nature of petitioner's business, the small sizes of the vast majority of parcels handled, the extremely low incidence of injuries resulting from falling parcels, and the high rate of turnover among the affected employees, we think it unreasonable and an abuse of discretion to require that all of the unloaders and sorters be equipped, either at their expense or at the expense of petitioner, with steel-toed safety shoes. And we think that the Commission should be required to give consideration to less rigorous requirements.

Upon reconsideration the Commission may conclude that substantial work shoes other than steel-toed shoes may suffice to protect adequately the feet and toes of all of the unloaders and sorters, or it may

conclude that some of those employees need to wear steel-toed shoes whereas others do not. Or the Commission may decide to direct its requirements at the hazard that has been described rather than to a protection of workers from the hazard.

Moreover, we are troubled by the indefiniteness of the Commission's requirement as to steel-toed shoes. We have already noted that as to those shoes there is a spread of $20.45 between the higher price mentioned and the lower, and that safety shoes vary widely not only in price but also in design and style. The order of the Commission seems to us to lack specificity as to the kind of shoe that the agency would deem suitable. To the extent, if any, to which the Commission may see fit to adhere to its safety shoe requirement, we think that the Commission should specify what kind or kinds of shoes would in its opinion be sufficient adequately to protect petitioner's employees.

The order of the Commission is vacated and the cause remanded to the Commission for further consideration and proceedings not inconsistent with this opinion.