**NORANDA ALUMINUM, INC.,**
**Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Ray Marshall, Secretary of Labor, United States Department of Labor, Respondents.**

**No. 78–1861.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1979.

Decided March 8, 1979.

Rehearing and Rehearing En Banc Denied April 2, 1979.

Valerie J. Held, St. Louis, Mo., argued for petitioner; Gerald Tockman, St. Louis, Mo., on brief.

Ann D. Nachbar, Atty., U.S. Dept. of Labor, Washington, D.C. (argued); Carin A. Clauss, Sol. of Labor, U.S. Dept. of Labor, Washington, D.C., Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health Review Commission, Washington, D.C., Allen H. Feldman, Acting Counsel for App. Litigation, U.S. Dept. of Labor, Washington, D.C., and Tedrick A. Housh, Jr., Regional Sol., Kansas City, Mo., on brief, for respondents.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and HANSON, Senior District Judge.*

HENLEY, Circuit Judge.

This is an original proceeding brought by a manufacturer of aluminum products to review an adverse decision of the Occupational Safety and Health Review Commission, established by the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.[1] The controversy arose when the Occupational Safety and Health Administration[2] cited petitioner for a "serious violation" of a safety standard promulgated by the Agency as provided by § 655.[3] The Agency recommended a pecuniary penalty of $400.00 and ordered that the violation be corrected within a specified period of time. Section 658. The Agency citation was sustained by the Commission after a hearing before an Administrative Law Judge (ALJ),

---

* The Honorable William C. Hanson, Senior District Judge, Southern District of Iowa, sitting by designation.

1. The Commission above mentioned will be referred to herein as the "Commission" or as OSHRC.

2. The Administration will be referred to as the "Agency."

3. A serious violation is one that involves a substantial risk of death or serious bodily harm to an employee of a business "from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in [a] place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation."

§ 659. We have jurisdiction of the instant petition by virtue of § 660(a). In the exercise of that jurisdiction we are required to apply to the factual findings of the Commission the familiar "substantial evidence" test. *United Parcel Service of Ohio, Inc. v. OSHRC*, 570 F.2d 806, 807 (8th Cir. 1978).[4]

The regulation involved in this case appears as 29 C.F.R. § 1910.176(b). It requires employers to provide secure storage for materials, and it specifies that where materials are to be stored in tiers they are to be secured by one means or another so that they are stable and secure against sliding or collapse.

Petitioner, Noranda Aluminum, Inc. of Marston, Missouri, is a large scale manufacturer of aluminum products of various sorts. The products include aluminum cylinders referred to as "billets." These billets are shaped like telephone poles and they vary in dimensions and weight with the weight variances naturally depending on the dimensions of the billets. The weight range is from around 400 pounds to more than 4000 pounds per billet.

Petitioner's plant has a number of operating areas and a storage area. Billets are fabricated and inspected in one particular area, after which they may be moved either to another operating area or to the storage area for more or less permanent storage. In either case the billets are stacked in tiers on what are known as "L-frames," and the "L-frames" are stacked on top of each other. Cranes are used in the stacking process. In 1977 various means were used by petitioner to secure the billets in place after they had been stacked.

In May, 1977 Richard Allen, an employee of petitioner, was engaged in stacking billets in the fabrication area. Two or more of the billets fell or rolled off of their stack, struck Allen and fatally injured him.

Following the accident petitioner, as required by OSHA regulation, reported the incident to the Agency which assigned a compliance officer to make an investigation. Whether the individual assigned was competent to conduct this particular investigation may be open to question. However, he undertook the investigation and in that connection made an inspection of the plant, observed relevant procedures and interviewed certain employees with respect to earlier incidents of falling billets. The compliance officer in due course made his report to the Agency which issued its citation which was contested by petitioner.

The hearing before ALJ consumed two days. The Agency introduced oral testimony and documentary evidence. In the course of the hearing it developed that petitioner had made some unspecified changes in its stacking procedures; the sufficiency of those changes to eliminate the alleged hazards seems not to have been explored.

At the conclusion of Agency's case petitioner moved for a dismissal of the citation. ALJ took the motion under advisement. Petitioner put on no evidence. Thereafter, ALJ determined that Agency had made a prima facie case that had not been rebutted, and that Agency's citation should be sustained. Discretionary review was refused by the Commission, and the effect of the refusal was to impose on petitioner the financial penalty that has been mentioned and also to impose on petitioner the duty to correct the allegedly hazardous condition or practices found to exist. Petitioner has never been told what would be required to satisfy Agency or the Commission with respect to the stacking procedures and security measures in question.

If all that the controversy involved was the $400.00 penalty imposed by the Commission, this case would not be here. It is here because if the administrative determination is not reversed, petitioner will be subject to the additional penalty of $1,000.00 per day prescribed by 29 U.S.C. § 666(d). And, ad-

---

4. Other recent decisions of this court arising under the Act include *Danco Const. Co. v. OSHRC*, 586 F.2d 1243 (8th Cir. 1978); *Western Waterproofing Co. v. Marshall, Secretary of Labor and OSHRC*, 576 F.2d 139 (8th Cir. 1978); *Long Mfg. Co., N.C. v. OSHRC*, 554 F.2d 903 (8th Cir. 1977); *Arkansas Best Freight Systems, Inc. v. OSHRC*, 529 F.2d 649 (8th Cir. 1976).

ditionally, petitioner may suffer indirect adverse effects should the administrative determination be allowed to stand.

In attacking the administrative determination under review petitioner advances a number of contentions. It is urged that 29 C.F.R. § 1910.176(b) is limited to the stacking and securing of materials after they have reached a point of more or less permanent storage and not to an essentially preliminary operation such as Mr. Allen was conducting when he was killed. It is contended further that the Agency and the Commission improperly based their determinations on the Allen accident as an isolated incident; that petitioner was not adequately advised of the nature and scope of the charge against it; that ALJ gave undue weight to the fact that petitioner elected not to put on any evidence on its own behalf; and that the finding of violation by the Commission is not supported by substantial evidence. Petitioner also complains that it has never been told what would be required to correct its alleged deficiency in compliance with Agency's standard.

■ Basically, we reject the contentions of petitioner. We think that the regulation in question was applicable to the stacking operation that resulted in Allen's death and was not limited to stacking operations in areas of permanent storage; we think that the compliance officer and later the Agency and the Commission undertook an over-all appraisal of petitioner's procedures and did not simply investigate the Allen accident; we feel that the charge was broad enough to cover the over-all operation, and that petitioner was aware of the scope of the charge and had ample opportunity to meet it. Finally, we are persuaded that the administrative finding of a viola-

tion of the regulation is supported by substantial evidence, although it should be conceded to petitioner that the Agency's case was a weak one.[5]

■ Accordingly, we affirm the Commission in its imposition of the $400.00 pecuniary penalty. However, in view of the fact that while the administrative proceedings were pending, petitioner made changes in its stacking and securing methods, we think that the Agency should take another look at petitioner's procedures and reevaluate them in the light of the changes and in the light of any changes in the applicable regulation that may have been made.[6]

If upon reexamination the Agency finds that petitioner is in compliance with applicable requirements, well and good. Otherwise, in fairness we think that the Agency should advise petitioner what it needs to do in order to get into compliance and should give petitioner a reasonable but limited time within which to do so. Should the dispute between petitioner and Agency persist, the latter can always issue a new citation and additional proceedings can be had.

Imposition of the $400.00 violation penalty is affirmed. The requirement that the violation in question be corrected within a limited period of time is reversed, and the cause is remanded for further proceedings by the Agency consistent with this opinion.

**5.** Whether petitioner would have prevailed before ALJ or the Commission had petitioner introduced any evidence is speculative. As it had a perfect right to do, petitioner chose to rely on what it claimed was a fatal weakness in Agency's case. That is a legitimate but always dangerous defense tactic in litigation. We do not think that ALJ or the Commission gave undue or improper weight to the fact that petitioner put on no evidence, and we feel that

Agency's evidence was more than a "mere scintilla" and that it was "substantial" under the rule laid down in *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

**6.** It is our impression that in recent months OSHA has made a number of changes in its regulations. We do not know whether those changes have affected 29 C.F.R. § 1910.176(b).