GENERAL ELECTRIC COMPANY,
Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and W. J. Usery, Jr., Secretary of Labor, Respondents,

and

International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC and its Local No. 301, Intervenors.

No. 572, Docket 75–4116.

United States Court of Appeals, Second Circuit.

Argued May 13, 1976.

Decided Aug. 17, 1976.

Stanley Schair, New York City (David L. Benetar, New York City, Roland C. Radice, Schenectady, N. Y., Kenneth D. Stein, Aranow, Brodsky, Bohlinger, Benetar & Einhorn, New York City, on the brief), for petitioner.

Nancy L. Southard, Atty., U. S. Dept. of Labor, Washington, D. C. (William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Counsel for App. Litigation, Allen H. Feldman, Asst. Counsel for App. Litigation, U. S. Dept. of Labor, Washington, D. C., on the brief), for respondents.

Winn Newman, Ruth Weyand, Boren Chertkov, Washington, D. C., on the brief, for intervenors.

Before LUMBARD and TIMBERS, Circuit Judges, and NEWMAN, District Judge.*

* Of the United States District Court, District of Connecticut, sitting by designation.

NEWMAN, District Judge:

General Electric Co. (GE) petitions pursuant to 29 U.S.C. § 660 to set aside an order of the Occupational Health and Safety Review Commission (OSHRC) insofar as the order upholds two of seventeen violations alleged in a citation issued by the Occupational Safety and Health Administration (OSHA). The first is a repeated serious violation of 29 C.F.R. § 1910.133(a)(1) concerning protective eye equipment, and the second is a willful serious violation of 29 C.F.R. § 1910.23(c)(1) concerning railings for raised platforms. The Administrative Law Judge (ALJ) upheld eight of the original violations including the eye equipment violation, but vacated the platform railing violation. CCH (1973–74 vol.) O.S.H.D. ¶ 16,946 (1973). The Commission by a divided vote affirmed the eye equipment violation and reinstated the citation for the platform railing violation. CCH (1974–75 vol.) O.S.H.D. ¶ 19,567 (1975).

The citation was issued to GE following an inspection by OSHA compliance officers of two of GE's buildings at Schenectady, New York. The officers observed two employees not wearing any protective eye equipment while operating a jack hammer to break up a concrete floor. They also observed a powered work platform without guardrails; the platform was at floor level but was capable of being raised to a height of more than ten feet.

■ 1. The eye equipment violation raises a potentially troublesome issue as to the extent of an employer's duty to require his employees to use safety equipment, though we are satisfied that decision can be reached without resolving the ultimate difficulties of that issue. The pertinent portion of the applicable standard reads as follows:

(a) General (1) Protective eye and face equipment shall be required where there is a reasonable probability of injury that can be prevented by such equipment. In such cases, employers shall make conveniently available a type of protector suitable for the work to be performed, and employees shall use such protectors. No unprotected person shall knowingly be subjected to a hazardous environmental condition. 29 C.F.R. § 1910.133(a)(1).

The violation was alleged in the citation as follows:

Failure to provide suitable eye protection for two employees, Bay K–13 (Building 273), using jack hammer to break up concrete.

There is no evidence that GE failed "to provide" safety glasses to the two employees, and no finding of such failure was made by the ALJ or the Commission.[1] The undisputed evidence established that eye protection such as safety glasses (including corrective lenses) is furnished by the company free of charge to all employees who work in certain areas that include Building 273. Throughout the building are posted signs stating: "Mandatory That You Wear Eye Protection In the Building At All Times." One of the two employees testified that at the beginning of his employment he was issued safety glasses and advised of the

---

1. The Secretary's brief contends fleetingly and the intervening union's brief contends extensively that the standard was violated by GE's failure to provide eye protection equipment that was "suitable." The contention is that only glasses with side shields or closely fitting eye cups would be suitable in view of the hazards encountered. This theory of violation is nowhere indicated in the decision we are called upon to review. The Commission made no finding as to the suitability of the glasses that GE provided its employees; its upholding of a violation rested entirely on GE's failure to make greater efforts to secure employee use of the equipment that was provided. The ALJ also made no finding as to suitability of the glasses. In fact, when questioning sought to explore what would have been proper eye protection under the circumstances, the ALJ sustained objection to such questioning, observing that the employees had "nothing on. So 'nothing' is equivalent with inappropriate . . ." and that "the only question before me is whether using nothing is any kind of protection." We confine our review of the Commission's order to the validity of the ground upon which the agency rested its decision. *Securities and Exchange Commission v. Chenery*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

company's rule respecting their use in posted areas.

Though the citation's allegation of a "failure to provide" is obviously not supported by any evidence, much less substantial evidence, the Commission nonetheless upheld the violation because of the company's failure to take sufficient steps to have the employees *use* the safety glasses that were provided. This approach raises three issues: whether the pertinent standard imposes upon employers an obligation to require employee use of eye protection equipment, whether GE was adequately charged with breach of such an obligation, and whether there is substantial evidence in the record to support a conclusion that such an obligation was breached.

The Commission found an employer obligation implied by § 1910.133(a)(1), which, according to the Commission's opinion, "clearly directs employers to require that employees use such protection, because under its express terms no person is knowingly to be subjected to a hazardous eye condition." In reaching this conclusion, the Commission acknowledged that it was overruling its prior decision in *Cam Industries, Inc.*, CCH O.S.H.D. (1973–74 vol.) ¶ 17,373 (1974), which had affirmed the following conclusion of the ALJ: "[Section 1910.-133(a)(1)] places no obligation either expressly or by implication on the employer to assure an employee's use of equipment which has been provided for his sole protection." CCH O.S.H.D. ¶ 15,113 (1972).

We find this an inappropriate case to resolve the sharp dispute between the parties as to the existence and, more particularly, the nature of an employer's obligation to require employee use of protective equipment. If the employer were a guarantor of the employee's use, a serious question would arise as to whether such an interpretation would exceed the legislative requirements. See *Brennan v. OSHRC and Hendrix, d/b/a Alsea Lumber Co.*, 511 F.2d 1139, 1144–45 (9th Cir. 1975). We do note, however, that if employers are to be held to an obligation requiring something more than instructing employees to use protective equipment but

something less than guaranteeing use, the promulgation of a standard fleshing out the employer's obligation would provide useful guidance to employers, the Commission, and reviewing courts.

Nor need we decide the equally troublesome problem of whether GE had adequate notice that it would be called to defend the adequacy of its efforts to assure employee use. Both the Secretary's citation and the formal complaint charged "failure to provide" with no reference whatever to an alleged failure to take adequate steps to assure employee use. This shift of the theory of the violation bends the principle of liberal construction of agency pleadings, see *National Realty and Construction Co., Inc. v. OSHRC*, 160 U.S.App.D.C. 133, 489 F.2d 1257, 1264 (1973), and cases cited *id.* at n. 28, perilously close to the breaking point.

We decline to decide the full dimensions of the employer's obligation and whether it was adequately charged with breach of that obligation because there is simply no evidence to support the Commission's ultimate conclusion of a breach of that obligation. The core of the Commission's reasoning is in these two sentences: "The violations were preventable. The record supports the conclusion that, although General Electric is making an effort to promote the use of protective eye equipment, its efforts have not gone far enough." No subsidiary fact-finding precedes these conclusions, nor are we referred to any evidence that would support pertinent findings. So long as the employer's obligation concerning employee use of protective equipment rests not on the specific terms of a standard expressly designed to govern employer obligations but solely on the generalized inference from the present eye protection standard, we think the D. C. Circuit's approach to the general duty standard, 29 U.S.C. § 654(a)(1), is applicable to § 1910.133(a)(1): "the Secretary must be constrained to specify the particular steps a cited employer should have taken to avoid citation, and to demonstrate the feasibility and likely utility of those measures." *National Realty and Construction*

*Co., Inc. v. OSHRC, supra,* 489 F.2d at 1268. The violation cannot stand upon unsupported generalizations that an employer's efforts to secure employee use of equipment have not gone "far enough" and that such non-use is "preventable" without evidence of what more the employer could have done and some basis to conclude that further efforts would have been feasible and successful, or at least substantially increased the likelihood of employee use. This record is silent on these subjects.

■ 2. The platform railing violation also encounters a fatal lack of evidence on a significant issue: whether the violation had occurred within six months prior to issuance of the citation, as required by 29 U.S.C. § 658(c).

GE was cited for violating 29 C.F.R. § 1910.23(c)(1), which provides:

(c) Protection of open-sided floors, platforms, and runways. (1) Every open-sided floor or platform 4 feet or more above adjacent floor or ground level shall be guarded by a standard railing (or the equivalent as specified in paragraph (e)(3) of this section) on all open sides . . . .[2]

The device in question is a powered platform, capable of being raised to a height of more than ten feet. When observed by the compliance officers, it was at floor level and without guardrails. The ALJ found that the platform had sockets for the purpose of erecting guardrails and that GE had instructed its employees not to use the platform without guardrails. Acknowledging evidence that the device had been used at sometime in the past without guardrails, the ALJ concluded that the record "does not establish a violation within the citable period." The Commission reinstated the violation, relying on two items of evidence. The union's safety director testified that he had seen the platform in use at heights of six and eight feet without guardrails. A company superintendent testified that the platform is used (with guardrails) approximately once a month. The Commission combined evidence of recent use with evidence of non-complying use to reach a conclusion of recent non-complying use. But as the ALJ and the dissenting commissioner observed, there simply is no evidence that the platform was used without guardrails during the preceding six months, much less that it was used during that period at a height of more than four feet, as specified in the standard.[3]

That portion of the Commission's order upholding the two challenged violations is set aside, and the citations for these two violations are vacated.

---

**2.** GE invites us to explore in depth the Byzantine pattern of OSHA standards in order to determine whether the powered platform device was covered by § 1910.23(c)(1), dealing with platforms, or by § 1910.28, dealing with scaffolds, which are defined as temporary platforms, 29 C.F.R. § 1910.21(f)(27), or by § 1910.-29, dealing with mobile scaffolds and mobile work platforms. In view of our disposition of this appeal, we decline the invitation. GE has advised that the Secretary has expressed an intention to revise Subpart D of § 1910, dealing with "Walking-Working Surfaces." We are confident there is room for increased clarity of definition.

**3.** Having purported to find evidence to support a conclusion of actual use of the platform without guardrails within six months, the Commission explicitly declined to rest decision on a theory of employee exposure to the risk of using an available but unsafe piece of equipment. *Compare Brennan v. OSHRC and Underhill Construction Corp.,* 513 F.2d 1032 (2d Cir. 1975), *with Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255 (4th Cir. 1974). As with the eye protection violation, we confine our review of the Commission's order to the validity of the ground upon which the agency rested its decision. *Securities and Exchange Commission v. Chenery, supra.*