**TODD SHIPYARDS CORPORATION,**
**Petitioner,**

v.

**SECRETARY OF LABOR and the Occupational Safety and Health Review Commission, Respondents.**

No. 75–1909.

United States Court of Appeals,
Ninth Circuit.

Dec. 13, 1977.

Rehearing and Rehearing En Banc
Denied Jan. 26, 1978.

**1328**

On Petition to Review an Order of The Occupational Safety and Health Review Commission.

Before ELY and KENNEDY, Circuit Judges; and FERGUSON,* District Judge.

PER CURIAM:

Todd Shipyards ("Todd") petitioned for review of an order of the Occupational Safety and Health Review Commission ("the Commission") dated January 31, 1975 imposing fines for several "repeat" violations of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 651 *et seq.* Three issues are presented: (1) whether the citation was issued with "reasonable promptness," (2) whether these violations were properly classed as "repeated," and (3) whether a manhole with a six inch coaming was properly regarded as "flush" so as to fall within the scope of 29 C.F.R. § 1915.-43(a). Under the circumstances of this case, we find no error in the Commission's ruling. We therefore affirm.

## I. *The Facts*

Todd is a California-based corporation engaged in shipbuilding and ship repair. From January until September 15, 1972, it performed extensive repair and maintenance work on the S/S OREGON MAIL at its shipyards in San Pedro, California. As a result of a routine inspection of the OREGON MAIL on June 5, 1972, the Secretary of Labor ("Secretary") cited Todd for five nonserious and two repeated violations of mandatory OSHA safety standards, including a failure to provide adequate scaffolding under 29 C.F.R. 1915.47(b),[1] a repeated failure to guard open manholes under 29 C.F.R. 1915.43(a),[2] and a repeated failure to

Thomas P. Laffey (argued), Los Angeles, Cal., for petitioner.

Dennis K. Kade, Atty. (argued), Dept. of Labor, Washington, D. C., for respondents.

---

* Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation.

1. *1915.47 Working surfaces.*

    (b) When employees are working aloft, or elsewhere at elevations more than 5 feet above a solid surface, either scaffolds or a sloping ladder, meeting the requirements of this subpart, shall be used to afford safe footing, or the employees shall be protected by safety belts and lifelines . . . .

2. *1915.43 Guarding of deck openings and edges.*

keep passageways used by employees clear of hazardous tripping obstructions under 29 C.F.R. 1915.51(a).[3] The violations were pertinently described, with data indicating their locations, as a failure to prevent an employee from using a ladder as a working surface during extensive welding; a failure to guard three open manholes around which employees were working; and two instances in which a working tank surface and passageway were obstructed with air hoses, welding leads, lumber and other materials. All violations were ordered abated within one day by this citation, which was not contested by Todd and became final and conclusive by operation of law pursuant to 29 U.S.C. § 659(a) and § 660(b).

During a routine reinspection of the ship on August 17, 1972, working conditions were observed which led the OSHA compliance officer to conclude that potential violations of these same regulations had occurred due to improper scaffold use, failure to guard manholes, and failure to keep passageways unobstructed.[4] He informed Todd of these problems and they were either abated or ordered abated before he left the ship. The OREGON MAIL left port on September 15, 1972. Formal citations proposing penalties of $2125, $400 and $350 were received by Todd on September 20, 1972, 34 days after the inspection of August 17, 1972.

Todd timely contested the citations and penalty proposals. Hearings before the administrative law judge were held in April and May of 1973. On July 30, 1973, he found that repeat violations of 29 C.F.R. §§ 1915.47(b), 1915.43(a), and 1915.51(a) had

occurred, but reduced the penalties imposed to $700, $350, and $350, respectively. On appeal, the Commission affirmed, noting that Todd had failed to show that it had been prejudiced by the delay in the issuance of the citation, but limiting the administrative law judge's ruling by indicating that there was no need to address the general legal question of what would form the basis for a repeated violation in a case where facially identical violations had occurred on the same ship within three months of each other.

## II. *Reasonable Promptness*

Todd first contends that the delay of 34 days between the date of inspection and the receipt of the citation mandates that the citation be vacated. The relevant statutory authority provides that

If, upon inspection or investigation, the Secretary or his authorized representative believes that an employer has violated a requirement of section 654 of this title, of any standard, rule or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, he shall with reasonable promptness issue a citation to the employer. 29 U.S.C. § 658(a) (1970).

The meaning and function of this "reasonable promptness" language is perhaps more clouded than clarified by the legislative history found in the report of the congressional conference committee.

The Senate bill provided that if, upon inspection or investigation, the Secretary or his authorized representative "deter-

---

(a) When employees are working in the vicinity of flush manholes and other small openings of comparable size in the deck and other working surfaces, such openings shall be suitably covered or guarded to a height of not less than 30 inches, except where the use of such guards is made impracticable by the work actually in progress.

3. *1915.51 Housekeeping.*
   (a) Good housekeeping conditions shall be maintained at all times. Adequate aisles and passageways shall be maintained in all work areas. All staging platforms, ramps, stairways, walkways, aisles, and passageways on vessels or dry docks shall be kept clear of all

tools, materials, and equipment except that which is in use, and all debris such as welding rod tips, bolts, nuts, and similar material. Hose and electric conductors shall be elevated over or placed under the walkway or working surfaces or covered by adequate crossover planks.

4. A fourth repeat violation, failure to comply with the requirements for platforms of staging set forth in 29 C.F.R. § 1915.41(h)(2), was also alleged. The administrative law judge found that no chargeable violation had occurred and ordered this section of the citation and the $375 proposed penalty vacated.

mines" that an employer has violated mandatory requirements under the Act, he shall "forthwith" issue a citation. The House amendment provided that if on the basis of an inspection or investigation the Secretary "believes" that an employer has violated such requirements, he shall issue a citation to the employer. The conference report provides that if the Secretary "believes" that an employer has violated such requirements he shall issue the citation with reasonable promptness. In the absence of exceptional circumstances any delay is not expected to exceed 72 hours from the time the violation is detected by the inspector.

. . . . .

The House amendment permitted a citation to be issued no later than 90 days following the occurrence of a violation. There was no comparable Senate provision. The House receded.

. . . . .

The House amendment prohibited issuance of a citation more than three months after the occurrence of any violation. The Senate bill had no such statute of limitations. The Senate receded with an amendment changing the three months to six months. 1970 U.S.Code Cong. & Admin.News, p. 5234.

■ The Commission originally tried to accommodate this legislative history by taking the position that a citation had to be issued within 72 hours from the time the Secretary "believed" it appropriate. The Seventh Circuit in *Brennan v. Chicago Bridge & Iron Co.*, 514 F.2d 1082 (1975) rejected this reading for reasons well stated in that opinion. The court left the Commission free to adopt a new rule, which it has now done. A citation will be vacated if delay in issuance has resulted in demonstrable prejudice to the employer. *E. C. Ernst, Inc.*, 1974–1975 OSHD ¶ 19179 (Rev.Comm'n 1975). Even if we were not bound to yield to the Secretary and the Commission a relatively broad discretion in interpreting the Act, *The Budd Co. v. OSHRC*, 513 F.2d 201,

204–205 (3d Cir. 1975), we would still be compelled to recognize the merit of this approach. It is very much in keeping with the remedial purpose of the Act, for the six month statute of limitations found in section 658(c) protects the employer, while the "reasonable promptness" language of section 658(a) is designed to protect the employee. To vacate a citation because of delay that is less than prejudicial would clearly run counter to the concern for safe working conditions that led to the enactment of OSHA.

■ Todd urges that even if prejudice to the employer is the appropriate test, the citation should be vacated because the departure of the OREGON MAIL from port three days before the citation was received severely hampered the preparation of its defense. Neither the administrative law judge nor the Commission found that such prejudice existed. The inspector reported the violations to the employer before leaving the ship; moreover, since the unsafe practices were abated immediately, photographic evidence of conditions at the time of inspection was particularly important. On the record before us, the Commission's determination must be upheld.

### III. *Repeat Violations*

29 U.S.C. § 666(a) provides that

Any employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $10,000 for each violation.

The $10,000 maximum fine under this section contrasts with the $1000 maximum for both serious and nonserious violations set forth in section 666(b) and (c).

■ Todd cites *Bethlehem Steel Corp. v. OSHRC*, 540 F.2d 157 (3d Cir. 1976) in support of its argument that a common, wilful or conscious design to flout a specific safety standard, not merely a second [5] fortuitous

---

**5.** The administrative law judge found, relying on an exhibit introduced by the Secretary, that

Todd had violated 29 C.F.R. § 1915.43(a) and § 1915.51(a) more than twice. We cannot say,

violation is necessary before the more severe sanction associated with a repeat citation may be invoked. We decline to adopt that view, which essentially equates "wilful" with "repeated" while failing to give appropriate weight to the disjunctive "or." Like the Commission, however, we do not regard this case as an appropriate one in which to address the general question of what is a repeat violation. Here, as a factual matter, the administrative law judge found that the violations were identical in character, occurred on the same ship, and took place within three months of each other. We believe that on such facts, the violations were indeed repeated.[6]

■ Todd also raises a due process challenge, arguing that the repeat citation failed to describe with particularly the nature of the earlier violation which was allegedly repeated. Because Todd failed to raise this issue in its appeal to the Commission, however, we are precluded from considering it here under the terms of our jurisdictional statute, 29 U.S.C. § 660: "No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." *Felton Construction Co. v. OSHRC,* 518 F.2d 49 (9th Cir. 1975).

### IV. *Raised Manhole*

■ Todd finally challenges its citation for violation of 29 C.F.R. § 1915.43(a) which requires that "flush manholes or other small openings of comparable size" be cov-

ered or guarded to a height of not less than 30 inches. Because the manhole in question had a six inch high "coaming," it was not literally "flush" with the deck. However, the administrative law judge found that the six inch rim failed to satisfy the 30 inch guard requirement also applicable to small openings. We can think of no case where deference to administrative expertise would be more appropriate. See *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *California Stevedore & Ballast Co. v. OSHRC,* 517 F.2d 986 (9th Cir. 1975).

The Commission's decision is AFFIRMED.

FERGUSON, District Judge, concurring:

I join in the court's opinion, but wish to add a further observation. Todd has appealed from an order of the Commission assessing fines in the amount of $700, $350 and $350 for repeated violations of regulations promulgated pursuant to OSHA. Although Todd clearly has standing to raise its first and last objections—those based on reasonable promptness and the application of the flush manhole regulation—I question the propriety of its challenging "repeat violation" fines which do not exceed the $1000 limit applicable to both serious and nonserious violations under 29 U.S.C. § 666(b) and (c).

We are charged with reviewing the order of the Commission. The order is that Todd pay certain fines imposed as a result of OSHA violations. The Commission has authority to set such penalties within the statutory limits after considering the factors

on the record before us, whether these violations, like those of June 5, 1972, were facially identical to the violations at issue here. In any event, we do not find the Third Circuit's analysis in *Bethlehem Steel* defining "repeatedly" as "more than twice" persuasive. A distinction in meaning between the adverbial and adjectival forms of the word "repeat" was surely not intended by Congress and cannot be supported by reference to common usage or common sense. On the facts of this case, second occurrences of the self-same violations satisfy the multiplicity requirement implicit in the term "repeatedly."

**6.** Although we need not dispose of Todd's arguments in general terms in light of the facts of

this case, we must note that when taken together their ramifications would be quite far-reaching. Todd demands notification within 72 hours of inspection; it would also require the Secretary to give specific notice of the details of the earlier violation on which the repeat violation is based. Finally, it would expect repeat citations to issue only after more than two prior violations which were of a similar specific character. It would be virtually impossible for the Secretary to issue repeat citations if all of these requirements were read as Todd would wish.

set out in section 666(i). These factors were specifically considered by the administrative law judge who reduced the penalty assessed rather than imposing that initially proposed. The Commission affirmed his order. A reviewing court may upset such a determination only where the Commission's discretion has been abused. *Beall Construction Co. v. OSHRC,* 507 F.2d 1041 (8th Cir. 1974).

Todd does not question the amount of the fines, and since the penalties imposed are within the realm of discretion, and could not be disturbed if entered as a result of a citation designating the violation as "serious" or "nonserious" rather than "repeat," I would find Todd without a cognizable injury arising from the labeling of the citations in question and would therefore reject its claim of error on this ground in addition to concluding that repeat violations occurred in this case.

KENNEDY, Circuit Judge, dissenting:

The Commission found that the petitioner had the status of a repeated violator of the Act and nothing in the record indicates that the Commission ignored that finding in assessing the penalty. I agree with the opinion of the court that it is entirely proper for the petitioner to challenge that determination, and I agree with parts II and IV of the opinion. But in my view this case should be remanded to the Commission for further proceedings with reference to the alleged repeat violations, and I dissent from the decision to affirm the Commission's order.

The Administrative Law Judge refused to inquire whether the violations in question here were substantially similar to the previous violations, and concluded that the petitioner was a repeated violator merely because it had committed the violations "more than once." On review, the Commission affirmed the finding of repeated violations with the simple observation that "on the same ship herein involved, respondent [previously] failed to comply with the same standards with which it is found in noncompliance here."

This court affirms the order holding that petitioner is a repeated violator, but declines to state a definition of the legal standards which support that determination. One might infer that the court adopts the Commission's conclusion that a repeated violation may be established on a mere showing of its having occurred more than once. That rule would be wholly inconsistent with the statute.

The congressional purpose shown by the design of this statute is to impose sanctions in the degree necessary to deter employer violations. Heavier sanctions are imposed when the employer's noncompliance indicates a degree of deliberateness or fault. Thus, we have held that section 666 penalties are to be imposed to the extent necessary to obtain employer compliance with the Act, but that the employer is not strictly liable for all violations. *Brennan v. Occupational Safety & Health Review Commission,* 511 F.2d 1139, 1144–45 (9th Cir. 1975). The definition of a repeated violation must be consistent with this statutory purpose.

A single violation of the Act is punishable by a civil fine of up to $1,000. 29 U.S.C. § 666(b)–(c). In assessing this penalty, the Commission is to consider, among other factors, the employer's "history of previous violations." *Id.* § 666(i). One must assume the Act contemplates that sufficient deterrence of an employer who has an OSHA violation record can in some cases be accomplished without applying sanctions for repeated violations. If every second offender were a repeated violator it would make no sense for the statute to direct that the history of violations be considered in assessing the relatively minor penalties for single violations.[1]

More severe penalties are applicable where an employer not only is aware of his OSHA transgression but also deliberately refuses to comply with the Act. An em-

---

1. Chairman Barnako makes this argument as part of a very thoughtful analysis of the type of conduct encompassed by repeated violations. George Hyman Construction Co., 5 OSHC 1318, 1321 (1977), *appeal docketed,* No. 77–1591 (4th Cir., May 2, 1977).

The Occupational Safety and Health Review Commission apparently can no longer agree on

ployer who has not corrected a violation subsequent to a final Commission order may be fined up to $1,000 per day. *Id.* § 666(d). Fines may be as much as ten times those imposed for a serious violation when an employer's noncompliance is knowing and intentional and hence may be characterized as a willful violation. *Id.* § 666(a). *See Intercounty Construction Co. v. Occupational Safety & Health Review Commission,* 522 F.2d 777, 779–80 (4th Cir. 1975), *cert. denied,* 423 U.S. 1072, 96 S.Ct. 854, 47 L.Ed.2d 82 (1976); *F. X. Messina Construction Corp. v. Occupational Safety & Health Review Commission,* 505 F.2d 701, 702 (1st Cir. 1974) ("willful" described as "conscious, intentional, deliberate, [and] voluntary").

A repeated violation, like a willful violation, is punishable by a potential $10,000 fine. 29 U.S.C. § 666(a). To adopt a definition of "repeated" which would include a second fortuitous violation of one of the myriad standards, rules, or orders promulgated pursuant to the Act would be to read into section 666 a punitive sanction unrelated to the section's purpose to deter. Such a definition is inconsistent with the statutory scheme. The more stringent penalties prescribed by section 666 are reserved for instances where an employer's deliberate disregard of the Act may be inferred. I would conclude, therefore, that a repeated violation requires a showing of at least constructive knowledge of the violation by the employer,[2] and a past history of violations of such nature that the employer's failure to prevent the most recent violation gives rise to an inference that he acted deliberately or with reckless disregard of the requirements of the Act.

The Third Circuit has reached substantially this result. *Bethlehem Steel Corp. v. Occupational Safety & Health Review Commission,* 540 F.2d 157 (3d Cir. 1976). Based on the legislative history of subsection 666(a) and the juxtaposition of the terms "willfully" and "repeatedly" in the statute, that court construed "repeatedly" as creating an objective evidentiary standard for proving willfulness. *Id.* at 161–62. The case also sets forth factors which are useful in evaluating whether an employer's conduct constitutes a repeated violation:

> [T]he number, proximity in time, nature and extent of violations, their factual and legal relatedness, the degree of care of the employer in his efforts to prevent violations of the type involved, and the nature of the duties, standards, or regulations violated.

*Id.* at 162. I would agree with the Third Circuit in holding that these criteria are

---

what constitutes a repeated violation. In a 1975 decision, the Review Commission read the term "repeated" to mean "happening more than once in a manner which flaunts the requirements of the Act," *Secretary v. General Electric Co.,* 17 OSAHRC 49, 65 (1975), *rev'd in part on other grounds sub nom. General Electric Co. v. Occupational Safety & Health Review Commission,* 540 F.2d 67 (2d Cir. 1976), thereby consciously adopting terminology used in a Third Circuit case which had discussed classification of violations as "willful." See *Frank Irey, Jr., Inc. v. Occupational Safety & Health Review Commission,* 519 F.2d 1200 (3d Cir. 1974), *aff'd,* 519 F.2d 1215 (3d Cir. 1975) (en banc), *aff'd on other grounds sub nom. Atlas Roofing Co. v. Occupational Safety & Health Review Commission,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). Subsequently, the Commission reiterated the definition of "repeated" as articulated in *General Electric* but added gloss which seemed to de-emphasize the importance of examining the nature of the violations: "Thus 'repeated' or 'repeatedly' identifies a second or subsequent violation of a standard previously cited." *Edward Hines Lumber Co.,* 4 OSHC 1735, 1737 (1976). The Third Circuit meanwhile adopted the "flaunting of the requirements of the Act" standard. *Bethlehem Steel Corp. v. Occupational Safety & Health Review Commission,* 540 F.2d 157, 162 (3d Cir. 1976). By the time the Commission was called upon to decide *George Hyman Construction Co., supra,* however, agreement on the meaning of repeated had so far deteriorated that no two of the three commissioners could reach a consensus on the issue.

The Commission's indecision and confusion, which might be dissipated by some definitive guidance from the circuit courts, can only be aggravated by the refusal of the majority in this case to squarely confront the problem of construing § 666(a).

2. This court has held that before a penalty may be assessed for even a nonserious violation of the Act, it must be established that the employer "knew or should have known of the existence of an employee violation . . . ." *Brennan v. Occupational Safety & Health Review Commission,* 511 F.2d 1139, 1145 (9th Cir. 1975).

relevant to determining whether an employer is a repeated violator.[3]

A bare showing that a regulation had been violated more than once on a given ship is not enough to bring the conduct automatically within the scope of the term "repeated." Cases may arise where the number of times a standard is violated will be sufficient to establish a repeated violation. But where the number of violations is low, further inquiry is necessary to establish the character of the employer's violations. Here the Commission refused to consider even whether the violations were substantially similar, and it made no inquiry at all as to whether it would be possible to draw an inference of deliberate or reckless disregard of the requirements of the Act. I would grant the petition for review and remand the case to the Commission for findings in accordance with the standards and definitions set forth in this opinion.

---

**3.** Though I am in substantial agreement with the definition of a repeated violation as articulated by the Third Circuit, I would avoid that court's use of the term "flaunting" as being somewhat inexact and confusing in light of its history of use in this context. See note 1, *supra*.