**TODD SHIPYARDS CORP., Petitioner,**

v.

**SECRETARY OF LABOR, Respondent.**

**No. 76–1336.**

United States Court of Appeals, Ninth Circuit.

Nov. 17, 1978.

Thomas P. Laffey (argued), of Parker, Milliken, Kohlmeier, Clark & O'Hara, Los Angeles, Cal., for petitioner.

Nancy Southard, Atty. (argued), Dept. of Labor, Washington, D. C., for respondent.

Before CHOY and ANDERSON, Circuit Judges, and PALMIERI *, District Judge.

CHOY, Circuit Judge:

This is an appeal from an order of the Occupational Safety and Health Review Commission (OSAHRC) finding that appellant Todd Shipyards Corporation (Todd) had "repeatedly" violated regulations promulgated by the Commission pursuant to the Occupational Safety and Health Act (OSHA). We affirm.[1]

I. *Statement of the Case*

The parties stipulated to the material facts. Todd is a New York based corporation engaged in shipbuilding and ship repair. It operates a shipyard in San Pedro, California, at which all activities concerned in this case occurred.

On March 27, 1974, the Secretary of Labor issued Todd a citation for a "repeat" violation of 29 C.F.R. § 1916.51(b), failing to maintain "good housekeeping conditions." On August 30, 1974, Todd received a citation for a "repeat" violation of 29 C.F.R. § 1916.47(b), failing to provide employees working more than five feet above a solid surface with a proper scaffold or ladder.[2] On October 29, 1974, Todd received a citation for "repeat" violation of § 1916.47(b). Todd did not contest these citations; they became final orders of the Commission. OSHA § 10, 29 U.S.C. § 659.

On January 30, 1975, the Secretary issued two additional citations to Todd for violations allegedly observed by OSHA inspectors during a warrantless search of Todd's San Pedro facility. The first citation alleged a "repeat" violation of § 1916.51(b). The second alleged a "repeat" violation of § 1916.47(b).[3] Todd notified the Commission that it intended to contest the citations under § 10(c) of OSHA, 29 U.S.C. § 659(c), providing for Commission review of citations issued by the Secretary.

The matter came before an administrative law judge who concluded that "repeat" should be struck from both January 30 citations. The judge found that the facts giving rise to the violations of § 1916.51(b) on January 30 were not identical and did not occur on the same vessel as the March 27 violation. Similarly, he found that the facts underlying the violations of § 1916.-47(b) on August 27, October 29, and January 30 were not identical and did not occur on the same vessel. Ruling that "repeat" violations must be committed "more than once" and "in a manner which flaunts [sic] the requirements of the Act," the judge concluded that the citations did not manifest a flouting of the Act. Therefore, the January 30 violations could not be "repeat" citations.

The Secretary of Labor then petitioned the Commission to review the decision of the administrative law judge. Considering whether the January 30 "violative conditions . . . were substantially the same" as the earlier violations, the Commission found the judge correct in striking "repeat" from the § 1916.51(b) charge of

---

* The Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. Under § 11(a) of OSHA, 29 U.S.C. § 660(a), this Court has jurisdiction to hear an appeal from an order of the OSAHRC if the alleged violation occurred within the geographical boundaries of the Circuit. Here the alleged violation occurred in San Pedro, California.

2. Section 1916.47(b) provides in relevant part: When employees are working aloft, or elsewhere at elevations more than 5 feet above a solid surface, either scaffolds or a sloping ladder . . . shall be used to afford safe footing, or the employees shall be protected by safety belts and lifelines . . . . .

3. The citation of August 30, 1974, described the alleged violation:
   Failed to provide a scaffold, sloping ladder or protect employees with a safety belt and lifelines.
   The October 29, 1974, citation specified:
   Failed to ensure that employees working at elevations more than 5 feet above a solid surface were provided with scaffolds on [sic] sloping ladders or were protected by safety belts and lifelines.
   The description of the relevant January 30, 1975, violation reads:
   Failed to provide a scaffold for a welder performing production-type welding while using a step ladder.

January 30, but in error in striking "repeat" from the § 1916.47(b) citation. The Commission imposed a fine of $160.00 for the "repeat" violation of § 1916.47(b). Todd appeals the Commission's decision that it "repeatedly" violated § 1916.47(b).[4]

## II. *"Repeat" Citations*

Section 17 of OSHA, 29 U.S.C. § 666, provides that the maximum civil penalty for each violation of OSHA standards is generally $1,000. Section 17(a), however, provides that civil penalties up to $10,000 for each violation may be imposed on an employer who "willfully or repeatedly violates" OSHA standards.[5] Congress enacted these fines to encourage employer compliance with OSHA regulations. *See* S.Rep.No. 91–1282, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin. News 5177, 5177; Conf.Rep.No. 91–1765, 91st Cong., 2d Sess., *reprinted in* [1970]

U.S.Code Cong. & Admin.News 5228, 5237–38. In establishing the greater penalties of § 17(a), Congress indicated that the repetition of a violation after a citation and small sanction demonstrated that greater penalties were necessary to gain that employer's compliance with OSHA standards. *See* Conf.Rep.No. 91–1765, *supra; George Hyman Construction Co. v. Occupational Safety & Health Review Commission,* 582 F.2d 834 (4th Cir. 1978).

Given this congressional purpose, the greater penalties for "repeat" violations should come into play whenever an employer fails adequately to respond to a citation. The recurrence at a given facility of a hazard similar to the one detailed in an earlier citation manifests the employer's failure to respond adequately and the need for greater penalties. *See George Hyman Construction Co.,* 582 F.2d at 837, 841.[6]

---

4. Under § 11(a) of OSHA, 29 U.S.C. § 660(a), the "findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive." Here the parties stipulated to the facts. Such a stipulation conclusively establishes the material facts it contains. *United States v. Houston,* 547 F.2d 104, 107 (9th Cir. 1976). The administrative law judge's determinations that the alleged violations were not identical and did not occur on the same vessel are supported by the stipulated facts considered as a whole, and are therefore conclusive.

   5 U.S.C. § 706(2)(A) allows a reviewing court to set aside findings and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." This court has held that where "there is no factual issue before us, the Commission's order must be affirmed if it be found to have been in accordance with law." *Brennan v. Occupational Safety & Health Review Comm'n,* 511 F.2d 1139, 1141 (9th Cir. 1975). Because we conclude that the Commission acted in accordance with law, we affirm its order.

5. Section 17(a) reads:

   Any employer who willfully or repeatedly violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter, may be assessed a civil penalty of not more than $10,000 for each violation.

6. Our conclusion is reinforced by the practical impossibility of requiring a precise equivalence between the two violations. In a case also

dealing with a company engaged in ship repair, the OSAHRC noted:

> Here, we find that the respondent's business of ship repair and maintenance is characterized by rapidly changing worksites. While the maintenance and repair activities involve different ships, they are all within the same port area and involve the same work crews, equipment, and techniques. In sum, the operating procedures and safety habits, or lack thereof, remain the same from ship to ship. In such a situation, it is extremely unlikely that two violative conditions would ever be factually identical. They would occur either on different ships or on different parts of the same ship. Thus, if we accepted respondent's "substantially identical" argument, it might be virtually impossible ever to find a repeated violation in the ship repair and maintenance activity. Since this activity is not exempt from the requirements of section 17(a), we reject respondent's argument.
>
> That the passageways [in which the hazards were located] were of different dimensions, in different parts of different ships, and contained different equipment has nothing to do with the plain fact that in both situations respondent subjected its employees to the same hazard . . . by failing to comply with the same standard.

*Secretary of Labor v. Bethlehem Steel Corp.,* 20 OSAHRC 227, 230 (1975), *modified and enforced sub nom. Bethlehem Steel Corp. v. Occupational Safety & Health Review Comm'n,* 540 F.2d 157 (3d Cir. 1976).

In the instant case, the Secretary issued an uncontested citation on August 30, warning Todd that it had "[f]ailed to provide a scaffold, sloping ladder or protect employees with a safety belt and life lines" when the regulations required such equipment. On October 29, Todd was cited for failing to provide "scaffolds [or] sloping ladders [or] safety belts and lifelines" when required. On January 30, the Secretary issued the contested citation, finding that Todd had "[f]ailed to provide a scaffold" when required. The Secretary thus found that the same employer had on three occasions failed to provide the same type of safety equipment under similar circumstances at the same facility. The limited sanctions of § 17 had not proved adequate to deter another breach of OSHA regulations. The more severe sanctions Congress provided were thus properly imposed.

Relying on the Third Circuit's decision in *Bethlehem Steel Corp. v. Occupational Safety & Health Review Commission*, 540 F.2d 157 (3d Cir. 1976), Todd argues that § 17(a) should apply only when an employer has "flaunted" [sic] OSHA standards. In *Bethlehem Steel* the Secretary had issued a citation for a "repeat" violation of an OSHA regulation. Referring to its earlier definition of the term "willfully" in § 17(a), the court wrote that "the objective conduct which 'repeatedly' encompasses must be similar to that which would raise an inference of willfulness." *Id.* at 162. The court then concluded that "repeat" should be read to impose the greater penalties of § 17(a) only when the employer has "flouted" OSHA standards through at least three violations of the same regulations. *Id.* at 162 n. 11.

This court and the Fourth Circuit have rejected both elements of the Third Circuit's definition. Both courts have recognized that "[t]he contention that for a violation to be repeated there must be two or more prior violations rests on a strained semantical argument that, the word repeated in its adverbial form—repeatedly—could only mean an action which takes place 'again and again.' *See Todd Shipyards Corp. v. Secretary of Labor*, 566 F.2d 1327, 1330–31 n. 5 (9th Cir. 1977)." *George Hyman Construction Co.*, 582 F.2d at 839. Moreover, both courts have concluded that the Third Circuit's view "essentially equates 'wilful' with 'repeated' while failing to give appropriate weight to the disjunctive 'or.'" *Todd Shipyards Corp. v. Secretary of Labor*, 566 F.2d 1327, 1331 (9th Cir. 1977). *See George Hyman Construction Co.*, 582 F.2d at 839–40. As the Fourth Circuit wrote: "Congress intended to provide for enhanced penalties when an employer committed recurrent violations that did not necessarily rise to the level of willfulness." *George Hyman Construction Co.*, 582 F.2d at 840. Finally, we noted in *Todd Shipyards* that adoption of Todd's and the Third Circuit's views would make it "virtually impossible" for the Secretary ever to issue repeat citations, 566 F.2d at 1331 n. 6, thereby undercutting congressional intent in including "repeatedly" within § 17(a). We thus reaffirm our rejection of the Third Circuit's approach.

Citing the Third Circuit's concern in *Bethlehem Steel* over the magnitude of § 17(a) sanctions, Todd also argues that it would be unfair to impose the severe sanctions upon an employer just because it inadvertently violated a standard it had violated before.[7] We have previously held, however, that a penalty may be assessed only if the employer "knew or should have known of the existence of an employee violation . . . ." *Brennan v. Occupational Safety & Health Review Commission*, 511 F.2d 1139, 1145 (9th Cir. 1975). Moreover, imposing the § 17(a) fines for repeated though not willful violations is consistent with other penalty provisions of the OSHA. *See*

---

**7.** Todd also contends that it would be unfair for a repeat citation to rest upon the occurrence of a hazard different from the hazard involved in the earlier citation but which falls under the same general regulation. This particularly troubles Todd given the catchall provision of

§ 5(a), 29 U.S.C. § 654(a). Our emphasis upon the similarity between the hazard involved in the repeat citation and the hazard involved in the earlier citation obviates the danger of unfairness Todd fears.

*George Hyman Construction Co.,* 582 F.2d at 840. And though § 17(a) authorizes imposition of fines up to $10,000, the Commission in its discretion sets the amount of a penalty in each case, "giving due consideration to the appropriateness of the penalty with respect to the size of the business . . . ., the gravity of the violation, the good faith of the employer, and the history of previous violations." OSHA § 17(i), 29 U.S.C. § 666(i). Finally, even if as a matter of policy § 17(a) authorizes penalties that are too great, that is an argument that should be addressed to Congress and not to this court.

▪ We conclude that because the January 30 citation involved a recurrence at the same facility of a hazard similar to those described in the earlier citations, Todd had "repeatedly" violated the OSHA standard within the meaning of § 17(a).[8]

### III. *Sufficiency of Notice*

▪ Section 9(a) of OSHA, 29 U.S.C. § 658(a), provides in part:

> Each citation shall be in writing and shall describe with particularity the nature of the violation, including a reference to the provision of the chapter, standard, rule, regulation, or order alleged to have been violated.

Todd argues that the Secretary's citation contravened this section because it did not describe with particularity the earlier violation upon which was based the claim of a "repeat" violation.

Section 9(a) is intended to ensure that an employer is given sufficient notice of the nature of the alleged violation so it can determine whether to contest the citation and what hazard must be corrected. But, as the District of Columbia Circuit has warned:

> [T]he familiar rule that administrative pleadings are very liberally construed and very easily amended . . . has par-

ticular pertinence here, for citations under the 1970 Act are drafted by non-legal personnel, acting with necessary dispatch. Enforcement of the Act would be crippled if the Secretary were inflexibly held to a narrow construction of citations issued by his inspectors.

*National Realty & Construction Co. v. Occupational Safety & Health Review Commission,* 160 U.S.App.D.C. 133, 140, 489 F.2d 1257, 1264 (1973) (footnotes omitted).

There may arise cases in which failure to specify the earlier violation upon which a repeat violation is based would deprive the employer of sufficient notice. In the present case, however, the citation liberally read provided sufficient notice.

First, § 9(a) explicitly requires reference to the nature of the violation and the provision allegedly violated. The January 30 citation satisfied these requirements. Section 9(a) by its own terms does not require specification of the earlier charge upon which a repeat violation is based.

Second, in the instant case Todd could easily have determined which earlier citations were the basis for the repeat charge. All three citations referred to the same regulation number. The descriptions of the hazards in all three were quite similar.[9] And the administrative law judge found that the citations were "particularized sufficiently" so that Todd "has not been prejudiced in pursuing a determination of this matter on the merits."

Todd responds that it is unfair to require a large corporation to keep files of charges from which it can find the basis for repeat citations. Congress recognized, however, that protecting the health and safety of employees would require recordkeeping. *See* OSHA § 8(c), 29 U.S.C. § 657(c). Moreover, we would contravene the congressional policy of encouraging employers to pay attention to citations and correct hazards were we to excuse Todd from keeping abreast of citations because of the number

---

8. Because in the present case the three violations occurred within a period of approximately five months, we need not consider if the passing of some length of time between citations

would prevent basing a repeat citation on the earlier occurrence.

9. *See* note 3 *supra.*

of citations it may be issued. And Todd offers no basis for our shifting the economic burden of recordkeeping from the employer to the Secretary.

Finally, had Todd encountered difficulty in determining the basis for the repeat citation, it could have invoked the OSAHRC regulations which make provisions for an employer to obtain more detailed information. For example, after the Secretary has filed his complaint with the Commission, the employer can move for a more definite statement. 29 C.F.R. § 2200.33; 29 U.S.C. § 661(f); Fed.R.Civ.P. 12(e). An employer can also request a conference prior to the Commission's hearing. 29 C.F.R. § 2200.51. In short, the Secretary's citation provided sufficient notice to Todd.

## IV. Fourth Amendment Claim

Todd argues that because the inspection was conducted without a warrant, the dangerous condition discovered thereby was the fruit of a violation of the fourth amendment and was not admissible against it. In *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Supreme Court held that an employer "was entitled to a declaratory judgment that the [OSHA] is unconstitutional insofar as it purports to authorize inspections without warrant or its equivalent and to an injunction enjoining the Act's enforcement to that extent." *Id.* at 325, 98 S.Ct. at 1827 (footnote omitted). Todd argues that *Barlow's* should be applied retroactively to the present case. Appreciating the novelty of its contention, Todd then argues that because the inspectors here did not have a warrant, the exclusionary rule should be applied and the citations dismissed as fruits of the illegal search.

### A. Timeliness of Claim

■ Relying upon § 11(a) of OSHA, 29 U.S.C. § 660(a), the Secretary contends that

Todd's fourth amendment claim is barred because it did not raise the claim in the OSAHRC proceeding. Section 11(a) specifies that "[n]o objection that has not been urged before the Commission shall be considered by the [appeals] court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." In *Marshall v. Able Contractors, Inc.*, 573 F.2d 1055, 1057 (9th Cir. 1978), this court implemented the policy of requiring initial presentation of claims to the OSAHRC by holding that an employer could not raise a fourth amendment claim for the first time in this court. In so holding, we relied upon *Usery v. Godfrey Brake & Supply Service, Inc.*, 545 F.2d 52 (8th Cir. 1976). There the Eighth Circuit "in the exercise of its discretion, [chose] not to address the search and seizure issue under OSHA" when it had not been raised in the district court. *Id.* at 54 n. 1.

Although § 11(a) seeks to encourage presentation of claims to the OSAHRC, it specifically provides for raising new issues in the courts of appeals under "extraordinary circumstances." Consistent with the policy of § 11(a), this court has considered a claim not raised before the OSAHRC which involved a fundamental legal question. *Brennan*, 511 F.2d at 1143 n. 4.

Extraordinary circumstances exist in the present case which excuse Todd's failure to raise before the OSAHRC its fundamental legal question about fourth amendment limits on OSHA inspections. The Supreme Court rendered its *Barlow's* decision after the OSAHRC hearing; obviously Todd could not argue its applicability at that hearing. Moreover, the Supreme Court has subsequently remanded to the courts of appeals a number of cases raising the fourth amendment issue for reconsideration in light of *Barlow's*.[10] Those remands manifest the Supreme Court's intention that

---

10. *E. g., New Orleans Pub. Serv., Inc. v. United States*, 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 and *Miss. Power & Light Co. v. United States*, 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 *remanded to* the Fifth Circuit (1978); *Consolidation Coal Co. v. United States*, 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783; *Marks v. United States*, 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 and *Zitko v. United States*, 436 U.S. 942, 98 S.Ct. 2842, 56 L.Ed.2d 783, *remanded to* the Sixth Circuit (1978).

*Barlow's* be applied retroactively. That intention indicates the importance of the policies underlying *Barlow's* and constitutes an extraordinary circumstance justifying initial consideration of Todd's fourth amendment claim by this court. *Cf. Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).[11]

### B. *Retroactive Application of the Exclusionary Rule*

■ Although the Supreme Court has indicated that the warrant requirement of *Barlow's* should be retroactively applied, *Barlow's* involved an action for a declaratory judgment and an injunction and thus did not address the application of the exclusionary rule to OSHA searches.[12] Todd acknowledges that neither this court nor the Supreme Court has ever applied the exclusionary rule to OSHA searches. Moreover, that the Supreme Court has never applied the exclusionary rule in a civil proceeding suggests that the rule should not be applied to OSHA proceedings. *See United States v. Janis,* 428 U.S. 433, 447, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *NLRB v. South Bay Daily Breeze,* 415 F.2d 360, 364 (9th Cir. 1969), *cert. denied,* 397 U.S. 915, 90 S.Ct. 918, 25 L.Ed.2d 96 (1970).

11. Because no such extraordinary circumstances excuse Todd's failure to raise its other constitutional claims below, we do not consider those claims.

12. The remanded cases cited in note 10 *supra* did not involve the retroactive application of the exclusionary rule to proceedings under the civil penalty provisions of the OSHA. The Fifth Circuit decisions dealt with government efforts to compel compliance by certain government contractors with an Executive Order prohibiting employment discrimination. In arguing that the district court had improperly enjoined compliance with the Order, the contractors claimed that the provisions of the Executive Order mandating that the employer make available to the Government certain records violated the employer's fourth amendment rights. The Fifth Circuit rejected this claim. *United States v. New Orleans Pub. Serv., Inc.,* 553 F.2d 459, 470–72 (5th Cir. 1977); *United States v. Miss. Power & Light Co.,* 553 F.2d 480, 482–83 (5th Cir. 1977). Nonetheless, the Fifth Circuit set aside the district court's injunctions, concluding that the Executive Order should be enforced initially through administrative processes and not through the courts.

In any event, Supreme Court discussion of retroactivity convinces us that the exclusionary rule could not be applied to the search at issue in the present case. In *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Supreme Court refused to apply the exclusionary rule retroactively to a conviction that had become final before *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Court wrote:

> [A]ll of the cases since [*Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949)] requiring the exclusion of illegal evidence have been based on the necessity for an effective deterrent to illegal police action. . . . We cannot say that this purpose would be advanced by making the rule retrospective. The misconduct of the police prior to *Mapp* has already occurred and will not be corrected by releasing the prisoners involved.

*Id.* at 636–37, 85 S.Ct. at 1741.

The Supreme Court again rejected retroactive application of the exclusionary rule in *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975). In *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the

*New Orleans Pub. Serv.,* 553 F.2d at 475; *Miss. Power & Light Co.,* 553 F.2d at 485. After the Supreme Court remanded the cases to the Fifth Circuit, that court remanded the cases to the district court. *United States v. Miss. Power & Light Co.,* 577 F.2d 1030 (5th Cir. 1978); *United States v. New Orleans Pub. Serv., Inc.,* 577 F.2d 1030 (5th Cir. 1978).

The Sixth Circuit cases involved, *inter alia,* a claim that evidence seized pursuant to allegedly defective search warrants should be excluded in a federal prosecution of defendants for criminal violations of the Federal Coal Mine Health & Safety Act of 1969. Finding that the Government's affidavits met the applicable probable cause requirement, the Sixth Circuit reversed the district court's suppression of the evidence. *United States v. Consolidation Coal Co.,* 560 F.2d 214, 221 (6th Cir. 1977). Upon remand from the Supreme Court, the Sixth Circuit reinstated its earlier judgment, finding it consistent with *Barlow's. United States v. Consolidation Coal Co., United States v. Marks, United States v. Zitko,* 579 F.2d 1011 (6th Cir. 1978).

Court had held unconstitutional a warrantless search by Border Patrol agents lacking probable cause. Refusing to exclude evidence from searches that took place before *Almeida-Sanchez* even if they violated the standards set in *Almeida-Sanchez,* the Court wrote:

> In . . . cases "[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials," . . . the doctrine has quite often been applied retroactively. *It is indisputable, however, that in every case in which the Court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the factfinding process, the Court has concluded that any such new constitutional principle would be accorded only prospective application.*

*Id.* at 535, 95 S.Ct. at 2316 (emphasis added). The Court then noted that the earlier cases had refused retroactivity because the deterrent effect of the exclusionary rule would not have been enhanced by the rule's application to searches occurring before the new constitutional limits had been announced. *Id.* at 538, 95 S.Ct. 2318. The Court also observed that the earlier decisions had found retroactivity unnecessary to protect "the imperative of judicial integrity" because "the introduction of evidence which had been seized by law enforcement officials in good-faith compliance with then-prevailing constitutional norms did not make the courts 'accomplices in the willful disobedience of a Constitution they are sworn to uphold.'" *Id.* at 536, 95 S.Ct. at 2317. Applying this teaching to *Peltier,* the Court determined that "the policies underlying the [exclusionary] rule do not justify its retroactive application to pre-*Almeida-Sanchez* searches." *Id.* at 534–35, 95 S.Ct. at 2316. *See Stone v. Powell,* 428 U.S. 465, 484-85, 96 S.Ct. 3037, 3047, 3048, 49 L.Ed. 2d 1067 (1976).

As in the Supreme Court cases mentioned above, the deterrent effect of the exclusionary rule would not be enhanced by its application to an OSHA search that may have exceeded the *Barlow's* limits but which took place before the *Barlow's* decision. Moreover, in effecting the warrantless search of Todd's shipyard, OSHA inspectors acted pursuant to apparent congressional authorization which had not yet been declared unconstitutional by a court of competent jurisdiction. *See Barlow's,* 436 U.S. at 311–312, 98 S.Ct. 1819–1820; *Barlow's, Inc. v. Usery,* 424 F.Supp. 437, 442 (D.Idaho 1977) (three judge court), *aff'd sub nom. Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). Given such adherence to "then-prevailing constitutional norms," we cannot say that enforcement of the instant citation and resulting Commission order would contravene "the imperative of judicial integrity."

Todd responds that prospective application of the exclusionary rule in OSHA searches would penalize Todd because Barlow's reached the Supreme Court first. But as the Supreme Court has noted, this seeming inequity is a necessary concomitant of prospective application of a new constitutional rule and "an insignificant cost for adherence to sound principles of decision-making." *Stovall,* 388 U.S. at 301, 87 S.Ct. at 1972.

Todd argues finally that prospective application of the exclusionary rule would deprive Todd of its only effective remedy for the allegedly unlawful search of its shipyard. But the exclusionary rule is not the personal right and remedy of a party allegedly the subject of an illegal search. Instead, it is a judicially created remedy designed to safeguard fourth amendment rights of the society as a whole through its deterrent effect on future unlawful police conduct. *Stone,* 428 U.S. at 486, 96 S.Ct. 3037; *Janis,* 428 U.S. at 446, 96 S.Ct. 3021; *United States v. Calandra,* 414 U.S. 338, 347–48, 94 S.Ct. 613, 619–620, 38 L.Ed.2d 561 (1974).

Because the exclusionary rule could not be applied retroactively to the search of

Todd's shipyard, the alleged illegality of that search could not free Todd of liability for the Secretary's citation. Accordingly, we need not determine if the search violated the Barlow's standard or if we would apply the exclusionary rule to an OSHA search in a proper case.

The Commission's decision is AFFIRMED.